UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CYNTHIA L. WHEELER,
    Plaintiff,

                                  Civil Action 2:16-cv-327
    v.                         Judge James L. Graham
                                  Magistrate Judge Elizabeth P. Deavers

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

## REPORT AND RECCOMENDATION

Plaintiff, Cynthia L. Wheeler, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental social security income ("SSI") and disability insurance benefits ("DIB"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 16), Plaintiff's Reply in Support (ECF No. 17), and the administrative record. (ECF No. 8.) For the reasons that follow, the Undersigned **RECCOMENDS** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

### I.    BACKGROUND

Plaintiff filed her application for benefits on October 16, 2012, alleging that she has been disabled since July 7, 2012. Plaintiff's applications were denied initially on March 12, 2013 and upon reconsideration on June 26, 2013. Plaintiff sought a *de novo* hearing before an administrative law judge. Administrative Law Judge Paul Yerian ("ALJ") held a hearing on

October 17, 2014, at which Plaintiff, represented by counsel, appeared and testified. (R. at 13.) Jerry A. Olsheski, Ph. D., a vocational expert, also appeared and testified at the hearing. On January 20, 2015, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.*) On February 19, 2016, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. Plaintiff then timely commenced the instant action.

In her Statement of Errors, Plaintiff raises two issues. (*See* Plaintiff's Statement of Errors ("SOE"), ECF No. 9.) Plaintiff asserts that the ALJ's determination at step two of the sequential evaluation was not supported by substantial evidence because the ALJ failed to identify, at step two, additional impairments that he regarded as non-severe. (SOE at 6–10.) Plaintiff next argues that the ALJ's formulation of Plaintiff's mental residual functional capacity ("RFC") was not supported by substantial evidence because he did not account sufficiently for Plaintiff's social limitations. (SOE at 10–13.)

In her Memorandum in Opposition, the Commissioner counters that the ALJ did consider the non-severe impairments and that any lack of consideration at step two would, at most, constitute harmless error. (Defendant's Oppositions (Opp.) ECF No. 16.) Moreover, the Commissioner contends that the ALJ accommodated the assessed limitations and therefore the RFC was supported by substantial evidence.

## II. HEARING TESTIMONY

### A. Plaintiff's Testimony

Plaintiff, who was forty-four years old at the time of the administrative hearing, has a high school degree, and some college education. At the hearing she testified that she lives in a two-story house with her husband and her adult daughter. (R. at 49.) Plaintiff testified that she

stopped working in September of 2012 because she did not want to be around other people, did not want to leave her house, and was afraid of the world. (R. 56–57.) She testified that she has felt that way for several years and that she is now at the point where if she hears a loud noise she either falls to the floor crying or starts screaming at someone. She testified that her husband goes to the store, cooks, cleans, and takes care of their cat and that she will go out with him once a month to pick up her prescriptions. (R. at 76.)

**B. Vocational Expert Testimony**

The vocational expert, Jerry Olsheski ("VE"), testified at the administrative hearing that Plaintiff's past relevant employment included work as an order clerk in customer service, classified as a sedentary exertional job, semi-skilled level and as a data entry clerk, also classified as a sedentary exertional job and semi-skilled. (R. at 78.)

The ALJ proposed a series of hypotheticals regarding Plaintiff's residual functional capacity ("RFC") to the VE. (R. at 79.) Based on Plaintiff's age, education, work experience, and the RFC ultimately determined by the ALJ, the VE testified that a similarly situated hypothetical individual could not perform Plaintiff's past work, but could perform approximately 1,030,000 light exertion, unskilled jobs in the national economy such as a hand packer, a cleaner, or as a mail clerk. (R. at 79–80.) The VE also testified if Plaintiff's RFC was reduced to sedentary, she could still perform work as an assembler, with approximately 1,000 jobs locally and 160,000 jobs nationally, as a product inspector, with approximately 500 jobs locally or 75,000 jobs nationally, or as a sorter, with 250 jobs locally and 41,000 jobs nationally. (R. at 80–81.)

## III.    MEDICAL RECORDS

### A. Dr. Kent Rowland, Ph.D.

Dr. Kent Rowland examined Plaintiff on February 20, 2013. (R. at 449.) At the appointment, she reported that she needs benefits because she is disabled by the symptoms of osteoarthritis fibromyalgia, degenerative joint and disc disease, and anxiety. (R. at 450.) At the time of her visit, she reported that had been depressed for about eighteen months and that she experiences the symptoms as "constant without abatement." (*Id.*) She also reported that the symptoms she was experiencing included dysphoria, lack of interest and pleasure, loss of interest, reduced energy, and reduced satisfaction with sleep and appetite. Additionally, she reported feelings of hopelessness, helplessness, and worthlessness. Plaintiff also reported general symptoms of anxiety and occasional panic attacks, the most recent panic attack at the time of the visit taking place in October of 2012. In the past, she received inpatient mental care at Ohio State University, Riverside Methodist Hospital, and Mount Carmel West Hospital. (*Id.*) She denied any history of outpatient mental health treatment. She underwent surgery for gastric bypass, tubal ligation, hysterectomy, and removal of tonsils. (*Id.*)

Plaintiff described her daily routine to Dr. Rowland as waking up in the morning, completing her morning hygiene, drinking milk. In contrast to her testimony at the administrative hearing, Plaintiff included feeding the cat as part of her daily activities. (R. at 452.) She told Dr. Rowland that she used to read and cross-stitch but she had not been able to enjoy those interests as of the date of the appointment. Dr. Rowland found that Plaintiff's "presentation during the interview supports average to above average range" of intelligence. (R. at 456.) And further that Plaintiff "should be expected to understand and apply instructions in a work setting consistent with average intellectual functioning (with exception of when her

4

capabilities are muted by symptoms of her anxiety and depression)." (R. at 456.) Dr. Rowland also found that Plaintiff "did not evidence an appealing social style" and noted his suspicion that she is at risk to respond inappropriately to supervision and coworkers. (*Id.*) Dr. Rowland concluded that Plaintiff suffers from an anxiety disorder. As a result, he determined she is prone to overreact to stressful situations putting her at high risk of responding inappropriately to work pressures.

**B. Dr. Charles Kistler**

Plaintiff visited Dr. Kistler on July 31, 2014. He then wrote a letter on October 1, 2014 to Plaintiff's counsel detailing her visit. (R. at 1032.) According to the letter, Plaintiff complained of ongoing problems related to her physical health including hypertension, hyperlipidemia, rheumatoid and psoriatic arthritis, degenerative disc disease of the lumbar spine, herniated disc of the cervical spine at C5-C6 with fusion, diabetes mellitus type 2, anxiety neurosis, depression and chronic pain syndrome. Upon review of her past medical history, Dr. Kistler noted type 2 diabetes, headaches, hypertension, and anxiety neurosis.

Dr. Kistler found that a physical examination of Plaintiff revealed normal HEENT levels, that her extraocular muscles were intact, that her pupils were normally reactive to light, but that Plaintiff suffers from migraines that she takes medication for daily, a herniated disc at C5-6 with fusion, weakness in the hands and shoulders and a history of blood clots in the legs and vascular problems with edema. (R. at 1032–33.) Dr. Kistler opined that Plaintiff "is permanently and totally impaired from any type of sustained remunerative employment from a physical and psychological standpoint." (R. at 1033.)

## IV. ADMINISTRATIVE DECISION

On January 20, 2015, the ALJ issued his decision. (R. at 10–35.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since July 7, 2012, the alleged onset date of disability. (R. at 15.) The ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the cervical, thoracic and lumbar spine with thoracic and lumbar scoliosis, and a history of C5-C6 fusion, obesity, psoriasis with psoriatic arthritis, degenerative joint disease of the hips and knees, diabetes mellitus, migraine headaches, history of right shoulder capsulitis, mood disorder, personality disorder, and history of drug seeking. (R. at 15–16.) He further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 16.)

At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that she can frequently crouch and climb

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

> ladders, ropes, or scaffolds, and can occasionally kneel or crawl. Because of her mental impairments, the claimant can perform simple repetitive and moderately complex tasks that have infrequent changes in job duties and that do not require a fast work pace or strict production quotas. She can do work requiring no more than occasional contact with supervisors and coworkers and no contact with the general public.

(R. at 21.) In reaching this determination, the ALJ assigned "significant weight" to the opinion of Dr. Rowland, reasoning that Dr. Rowland's opinion "was the result of his own observations, psychometric testing, a clinical interview, and a mental status evaluation" that were generally consistent with other opinion evidence including that of the BDD psychologist experts and with the medical evidence as a whole. (R. at 26.)

The ALJ found that Dr. Kistler was not a treating physician. Nevertheless, he determined that even if he was considered a treating physician, Dr. Kistler's opinion did not merit controlling weight or any special degree of deference because "[t]he doctor did not provide sufficient clinical and laboratory data to support his conclusion, nor did he provide a detailed function-by-function analysis (*see* SSR 96-8p) that demonstrates the inability to perform any type of gainful activity." (R. at 31.) Moreover, the ALJ did not find Dr. Kistler's opinion that Plaintiff's mental impairments contributed to her inability to work credible because he identified himself as a family practice physician "and there is no evidence that he is trained in the evaluation or treatment of mental illness." (*Id.*) The ALJ also observed that Dr. Kistler assessed limitations for Plaintiff that were unrelated to the medical conditions that he identified. (*Id.*) As an example, the ALJ points out that Dr. Kistler reported that Plaintiff suffered from central and peripheral diabetic neuropathy, "despite indicating that her sensory examination was intact and her upper and lower extremities" because there was no diagnosis of diabetic neuropathy in the medical evidence provided by the Plaintiff. (*Id.*)

The ALJ found Plaintiff's testimony untrustworthy. He observed that Plaintiff made inconsistent statements and that "[a]lthough the inconsistent/exaggerated information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless such statements suggest that the information provided by the claimant generally may not be entirely reliable." (R. at 32.) The ALJ pointed out several inconsistencies in the Plaintiff's statements. For example, Plaintiff testified that she was unable to walk or eat for a month following her hospitalizations; however her doctor reported in May 2014 that she gained ten pounds over the month after her hospitalization and that she walked with a normal gait and that displayed normal station. (R. at 31, 1061.) Further, although Plaintiff testified to falling to the floor crying and screaming if she hears a loud noise, no treating source ever observed an uncontrolled response from Plaintiff of that nature. (*Id.*) Also, Plaintiff reported in her background questionnaire that she could sit for no more than 20 to 30 minutes at a time without needing to change position (R. at 275), but was able to sit for one hour at her disability hearing without standing or exhibiting other pain behaviors. (R. at 31.)

Moreover, Plaintiff testified that she never goes downstairs and that her husband does everything for her around the house including all of the household chores and taking care of the cat. (R. at 73, 74, 76.) She testified "he [her husband] does all the cooking. He does all the cleaning. He takes care of the cat." (R. at 76.) Plaintiff, however, reported in her application for disability benefits in response to "for whom do you care, and what do you do for them?" that she cares for her husband, stating "I cook for him, pick up after him . . . ." (R. at 240.) She further wrote that she prepares her own meals, making "nothing big just like sandwiches, eggs, hamburgers + homemade fries." (R. at 241.) She also wrote that the chores she is able to perform include "laundry, running sweeper, dishes, making bed, picking up stuff." (R. at 242.)

The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 35.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and

9

where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

In her Statement of Errors, Plaintiff argues that the ALJ's determination at step two of the sequential evaluation was not supported by substantial evidence and the ALJ's formulation of Plaintiff's RFC at steps four and five was not supported by substantial evidence. (*See* SOE, ECF No. 9.)

### A. ALJ's Determination at Step Two

The ALJ's findings at step two are supported by substantial evidence. At step two, the ALJ must determine whether the claimant has a severe impairment, which is construed as a "*de minimus* hurdle . . . intended to 'screen our totally groundless claims." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 576 (6th Cir. 2009) (citing *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985)). Thus, if an impairment has "more than a minimal effect" on the claimant's ability to do basic work activities, the ALJ must treat it as "severe." Soc. Sec. Rul. 1996 WL 374181, at *1 (1996). Once an ALJ finds at least one severe impairment, "an ALJ's failure to find additional severe impairments at step two does 'not constitute reversible error.'" *Nejat*, 359 F. App'x. at 577 (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 2009).

Plaintiff argues that the record lacks substantial evidence in support of the ALJ's determination at step two, reasoning that the ALJ failed to address Plaintiff's fibromyalgia, lymphadenopathy, migraine headaches, rheumatoid arthritis, osteoarthritis, gastric bypass, and

10

hand and shoulder weakness.[2] (SOE at 8–9.) She argues that "the point here is not to prove in a post-hoc fashion that the impairments listed above are severe. The point is that as finder of fact, the ALJ had a duty to consider all impairments documented in the record and make well-reasoned findings as to the determinability and severity of each condition identified in the record." (SOE at 9.)

First, a review of the record reveals that the ALJ did indeed consider Plaintiff's arthritis, migraine headaches, and shoulder weakness at step two. In his finding at step two, the ALJ identified psoriatic arthritis and bilateral hip and knee pain, which was identified in treatment notes as symptoms of osteoarthritic disease and rheumatoid arthritis (R. 26, 468–72), migraine headaches, and right shoulder capsulitis. (R. 15–16.)

The Undersigned concludes that the ALJ made clear that he considered the remaining impairments of which Plaintiff complains. For instance, Plaintiff faults the ALJ for purportedly not considering her fibromyalgia when making the step two determinations. The record, however, is clear that the ALJ acknowledged Plaintiff's contention that she was disabled in part due to fibromyalgia, and correctly determined that Plaintiff's fibromyalgia did not constitute a medically determinable impairment. The ALJ's finding is supported in the record. The examining doctors noted that Plaintiff did not exhibit the requisite tender points to constitute a medically determinable impairment. Indeed, Plaintiff had not been diagnosed with fibromyalgia on the basis of tender points by any physician of record. *See* Social Security Ruling 12-2p, 2012 WL 3104869, at *2–3 (July 25, 2012) (providing that diagnosis requires "[a]t least 11 positive tender points on physical examination.").

---

[2] Although Plaintiff contends that the findings at step two failed to address her fibromyalgia, lymphadenopathy, migraine headaches, rheumatoid arthritis, osteoarthritis, gastric bypass, and hand and shoulder weakness, she does not contend that the conditions are severe.

Similarly, the ALJ properly accounted for Plaintiff's lymphadenopathy. As the record reveals, Plaintiff's "lymphadenopathy [had] resolved." (R. 29, 931.) Additionally, concerning Plaintiff's allegations of hand and shoulder weakness, the ALJ cited physical examination notes and a nerve conduction study secondary to Plaintiff's complaints of numbness and weakness in her arms showing that Plaintiff had mostly normal strength and neurological functioning in her upper extremities. (R. at 24, 26.) Finally, the ALJ did, in fact recognize and account for Plaintiff's gastric bypass surgery. (R. at 26.)

The record reflects that Plaintiff's impairments of fibromyalgia and lymphadenopathy do not constitute severe impairments as medical evidence showed the lymphadenopathy had been resolved at the time of the hearing and Plaintiff did not present sufficient evidence for her complaint of fibromyalgia to be considered medically determinable. (Social Security Ruling 12-2p, 2012 WL 3104869, at *2–3 (July 25, 2012) (providing that diagnosis requires "[a]t least 11 positive tender points on physical examination.")). The ALJ's failure to classify Plaintiff's gastric bypass surgery as "severe" or "non-severe" is not a reversible error. Even if the gastric bypass impairment would be considered "severe," once an ALJ finds at least one severe impairment, "an ALJ's failure to find additional severe impairments at step two does 'not constitute reversible error.'" *Nejat*, 359 F. App'x. at 577 (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 2009). Therefore, the ALJ's consideration of the cumulative effect of Plaintiff's impairments (both severe and non-severe) throughout the remaining steps of the analysis rendered any error harmless. *Id.*

Because the Undersigned finds that the ALJ did not commit reversible error at step two, it is **RECOMMENDED** that Plaintiff's first contention of error be **OVERRULED**.

## B. ALJ's Formulation of Plaintiff's RFC

In her second assignment of error, Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence. Specifically, Plaintiff asserts that the ALJ erred because he agreed with Dr. Rowland's assessment, but that the assessed RFC did not adequately account for the limitations Dr. Rowland reported. (SOE at 11–13.)

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). When considering the medical evidence and calculating the RFC, "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)); *see also Isaacs v. Astrue*, No. 1:08–CV–00828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (holding that an "ALJ may not interpret raw medical data in functional terms") (internal quotations omitted).

An ALJ is required to explain how the evidence supports the limitations that he or she set forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can

13

perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted).

The Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(e). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(e); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

In his written decision, the ALJ adopted a mental RFC to "perform simple repetitive and moderately complex tasks that have in frequent [sic] changes in job duties and that do not require a fast work pace or strict production quotas" and "requiring no more than occasional contact with supervisors and coworkers and no contact with the general public." (R. at 21.) Plaintiff argues that the RFC does not adequately account for her limitations as assessed by Dr. Rowland.

Plaintiff argues that the ALJ failed to reasonably accommodate the functional limitation assessed by Dr. Rowland.[3] (SOE at 12.) Dr. Rowland found that Plaintiff "should be expected to understand and apply instructions in a work setting consistent with average intellectual functioning (with the exception of when her capabilities are muted by symptoms of her anxiety and depression)." (R. at 456.) Plaintiff contends that while the ALJ limited the types of activities "that may be available to Ms. Wheeler, in the absence of symptomology, he made no accounting for the frequency of her inability to perform these functions." (*Id.*) Plaintiff does not provide support beyond the conclusory statement that the RFC does not take into

---

[3] Plaintiff does not argue that the ALJ did not weigh Dr. Rowland's opinion properly, but instead argues that the RFC did not adequately account for all of Dr. Rowland's functional limitations.

consideration Plaintiff's capabilities when she experiences symptoms to evidence that the ALJ's RFC was not supported by substantial evidence.

Here, the Undersigned finds that substantial evidence demonstrates that the ALJ's RFC adequately accounted for all of the limitations that he found credible. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [the claimant's] residual functional capacity.") (quoting *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (citation omitted). The ALJ specifically included consideration of Plaintiff's mental impairments in his RFC. The ALJ wrote "**Because of her mental impairments**, the claimant can perform simple repetitive and moderately complex tasks that have in frequent [sic] changes in job duties and that do not require a fast work pace or strict production quotas." (R. at 21) (emphasis added.) Plaintiff does not put forward evidence to dispute that her "muted" capabilities are not considered by the ALJ as one of her mental impairments. Under the ALJ's RFC, Plaintiff is restrictively limited to performing simple, repetitive, and moderately complex tasks in a work setting that involves infrequent changes. Those characteristics account for Plaintiff's capabilities, even when she is experiencing depression and anxiety. While Dr. Rowland found that Plaintiff's capabilities could be "muted" when she is experiencing depression and anxiety, he did not find those symptoms completely debilitating.

The Undersigned finds Plaintiff's argument that the ALJ did not adequately accommodate Dr. Rowland's finding on Plaintiff's social limitations similarly fails. Plaintiff contends that although the ALJ's RFC limits the amount of time that Plaintiff would have to interact with coworkers and supervisors, the RFC is not supported by substantial evidence because "the ALJ offered no accounting for [Dr. Rowland's finding that Plaintiff is at risk of

15

responding inappropriately to coworkers and supervisors] and he made no attempt to link his reduced frequency of contact to accommodation of Dr. Rowland's findings." (SOE at 13.) The Undersigned finds that the ALJ did properly accommodate the risk of Plaintiff acting inappropriately by limiting Plaintiff to work which involves at most "no more than occasional contact with supervisors and coworkers and no contact with the general public." (R. at 21.)[4]

Because the Undersigned finds that the ALJ's RFC formulation was supported by substantial evidence, it is **RECCOMENDED** that Plaintiff's second contention of error be **OVERRULED**.

## VII. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECCOMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VIII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, he or she may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

---

[4] The Undersigned also notes that the ALJ's interpretation of Dr. Rowland's "at-risk" assessment and incorporation into the RFC is supported by the opinion of state agency reviewing psychologist Vicki Warren, Ph. D. Upon review of Plaintiff's medical records, Dr. Warren accorded Dr. Rowland's opinion great weight. (R. at 101.) Moreover, she opined that Plaintiff "is capable of carrying out simple to moderately complex 1-4 step instructions in a low pressured environment" and, taking into account Plaintiff's social limitations, found that Plaintiff "is capable of at most infrequent contact w/supervisors and coworkers, should avoid contact w/the general public." (*Id.*)

Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED**.

Date: August 3, 2017                              /s/ *Elizabeth A. Preston Deavers*
                                                  ELIZABETH A. PRESTON DEAVERS
                                                  UNITED STATES MAGISTRATE JUDGE