```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

Cynthia L. Wheeler,

    Plaintiff,

    v.                           Case No. 2:16-cv-327

Commissioner of
Social Security,

    Defendant.

<u>ORDER</u>

Plaintiff Cynthia L. Wheeler brings this action under 42 U.S.C. §§405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for supplemental security income and disability insurance benefits. In a decision dated January 20, 2015, the administrative law judge ("ALJ") found in step two of the five-step analysis required under the social security regulations that plaintiff had severe impairments consisting of degenerative disc disease of the cervical, thoracic and lumbar spine with thoracic and lumbar scoliosis and a history of C5-C6 fusion, obesity, psoriasis with psoriatic arthritis, degenerative joint disease of the hips and knees, diabetes mellitus, migraine headaches, a history of right shoulder capsulitis, mood disorder, anxiety disorder, personality disorder and a history of drug seeking. PAGEID 58-59. After considering the entire record, the ALJ found that plaintiff's residual functional capacity ("RFC") would permit her to perform sedentary work with some physical limitations. The RFC also limited plaintiff to performing simple repetitive and moderately complex tasks that have infrequent changes in job duties and do not require a fast work pace or strict production quotas, with no more

than occasional contact with supervisors and coworkers and no contact with the general public. PAGEID 64. After considering the testimony of a vocational expert, the ALJ decided that there were jobs which plaintiff could perform and that plaintiff was not disabled. PAGEID 77-78.

This matter is before the court for consideration of plaintiff's August 17, 2017, objections to the August 3, 2017, report and recommendation of the magistrate judge recommending that the decision of the Commissioner be affirmed. The government has filed a response to the objections.

I. Standard of Review

If a party objects within the allotted time to a report and recommendation, the court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also*, 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). Put another way, a decision supported by substantial evidence is not subject to reversal, even if the

reviewing court might arrive at a different conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). Even if supported by substantial evidence, however, "'a decision of the Commissioner will not be upheld where the [Commissioner] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

II. Objections

A. Step Two Analysis

Plaintiff argues that the ALJ erred in not discussing her fibromyalgia, lymphadenopathy, migraine headaches, rheumatoid arthritis, osteoarthritis, gastric bypass surgery, and hand and shoulder weakness during his step two analysis. The magistrate judge noted that plaintiff does not contend that these conditions are severe, but simply claims that the ALJ erred in failing to discuss them at step two. Doc. 18 at 11.

In determining whether a claimant is disabled, the ALJ must follow the five-step analysis in 20 C.F.R. §404.1520(a)(4). *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). At step two, the Commissioner must determine whether the claimant has a severe impairment. 20 C.F.R. §404.1520(a)(4)(ii). Step two is the means by which the Commissioner screens out totally groundless claims, *see Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985), and is a "*de minimis* hurdle," *see Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988). Where an ALJ finds at least one severe impairment and considers all of a claimant's impairments in the remaining steps of the disability

3

determination, an ALJ's failure to find additional severe impairments at step two does not constitute reversible error. *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009)(citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).

The court agrees with the magistrate judge's recommendation that this claim of error be overruled. Although the step two section of the ALJ's opinion is brief, the ALJ incorporates later discussions of plaintiff's medical conditions into this section, stating, "Specific limitations are discussed below." PAGEID 59. The ALJ also stated that in making his RFC findings, he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" PAGEID 64.

Some of the ailments mentioned by plaintiff in this objection were in fact found by the ALJ at step two to be severe impairments. The listing of severe impairments included migraine headaches. *See* PAGEID 59. The ALJ found additional severe impairments consisting of psoriatic arthritis and degenerative joint disease of the hips and knees, which, as the magistrate judge observed, were identified in treatment notes as symptoms of osteoarthritic disease and rheumatoid arthritis. *See* PAGEID 58-59; Doc. 18 at 11. The ALJ also referred to these conditions later in his decision. *See* PAGEID 67 (noting plaintiff's treatment for a migraine headache on October 21, 2012); PAGEID 60, 66 (noting that plaintiff had mild osteoarthritis of both knees, but that her condition did not meet the requirements for the listed impairment of inflammatory arthritis).

4

The ALJ also addressed and considered medical ailments which he found to be nonsevere. The ALJ discussed plaintiff's 2012 lymphadenopathy (with no evidence of lymphoma), a condition which was resolved with treatment. PAGEID 66. He summarized plaintiff's self-professed claims that she has fibromyalgia, but correctly noted that plaintiff has never been diagnosed by a physician as having this condition, as required under SSR 12-2P (S.S.A.), 2012 WL 3104869 (July 25, 2012). PAGEID 69, 74-75. The ALJ also referred to plaintiff's history of gastric bypass surgery, commenting that plaintiff "has been able to keep most of her weight off since having gastric bypass surgery in April 2007." PAGEID 65, 69. On a related issue, the ALJ listed obesity as a severe impairment and considered "its effect both on the severity of the claimant's limitations and on her residual function capacity." PAGEID 60. However, he observed that plaintiff's weight did not appear to seriously impact her ability to walk in an effective manner, and that plaintiff did not specifically allege significant impairment as a result of obesity. PAGEID 60.

Finally, the ALJ reviewed records concerning plaintiff's claims of hand and shoulder weakness. *See* PAGEID 66 (noting an exam on October 6, 2012, which showed that "[s]trength was slightly decreased (4/5) on the left albeit with poor effort"); PAGEID 67 (noting that neurologic findings were inconsistent and that plaintiff was given a psychiatry referral due to a possible nonphysical etiology of her complaints of right-sided weakness); PAGEID 69 (noting a medical exam in May, 2013, which showed that plaintiff had full strength and range of motion). The ALJ also stated that the evidence did not show that plaintiff is unable to

5

perform fine and gross movements effectively. See PAGEID 59.

Because the ALJ adequately addressed plaintiff's severe and nonsevere impairments in other parts of his decision, any error which occurred due to the ALJ's failure to discuss them under the step two heading of the decision was harmless.

B. RFC Determination

Plaintiff argues that the RFC formulated by the ALJ failed to specifically address some of the limitations discussed in the report of Dr. Kent Rowland, Ph.D., a consultant who saw plaintiff for a mental evaluation on February 20, 2013. The court agrees with the magistrate judge's recommendation that this objection is not well taken.

A claimant's RFC is the most that a claimant can do despite his or her limitations. 20 U.S.C. §404.1545(a)(1). Disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it. *Hill v. Comm'r of Soc. Sec.*, 560 F.App'x 547, 551 (6th Cir. 2014). In making the RFC determination, the ALJ must evaluate all the medical evidence as well as the claimant's testimony. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). However, the ALJ, not a physician, ultimately determines the claimant's RFC. *Coldiron v. Comm'r of Soc. Sec.*, 391 F.App'x 435, 439 (6th Cir. 2010); 20 C.F.R. §§404.1527(e)(2) and 404.1546(c).

Plaintiff first notes Dr. Rowland's statement that plaintiff "should be expected to understand and apply instructions in a work setting consistent with average intellectual functioning (with the exception of when her capabilities are muted by symptoms of her anxiety and depression.)" PAGEID 504. Although the ALJ limited

6

plaintiff to performing simple repetitive and moderately complex tasks that have infrequent changes in job duties and do not require a fast work pace or strict production quotas, *see* PAGEID 64, plaintiff argues that the ALJ erred in not explaining how these accommodations adequately addressed the frequency of her inability to perform intellectual functions due to her mental impairments.

Aside from the fact that an ALJ need not discuss every piece of evidence in the record for his decision to stand, *see Thacker v. Comm'r of Soc. Sec.*, 99 F.App'x 661, 665 (6th Cir. 2004), plaintiff's argument fails because Dr. Rowland expressed no opinion as to how frequently plaintiff's anxiety and depression would "mute" her intellectual functioning in a work setting, nor did he opine that the "muting" of her intellectual functioning would be to a degree which would render her unable to perform her job duties. The ALJ cannot be faulted for not specifically discussing how the RFC took into account the frequency of plaintiff's mental symptoms when Dr. Rowland expressed no opinion as to how often plaintiff was likely to experience these symptoms to a degree which would interfere with her intellectual functioning or impact her job performance.

Plaintiff takes issue with the magistrate judge's statement that plaintiff "does not put forward evidence to dispute that her 'muted' capabilities are not considered by the ALJ as one of her mental impairments[,]" *see* Doc. 18 at 15, as somehow impermissibly shifting some burden of proof to plaintiff. While this sentence is awkwardly worded, the court construes it as an observation, and a valid one, that plaintiff has pointed to nothing in the administrative record or in the wording of the ALJ's decision which

7

would support her argument that the ALJ failed to consider her "muted" intellectual capabilities in formulating the RFC. In fact, the ALJ gave significant weight to Dr. Rowland's opinion. PAGEID 69. The ALJ stated that Dr. Rowland "did not believe [plaintiff] was limited in maintaining attention, concentration, persistence, and pace for work related tasks, except as her capacity was muted by symptoms of anxiety and depression" and that plaintiff "was able to attend and concentrate effectively during her evaluation." PAGEID 68. The ALJ also cited Dr. Rowland's report that plaintiff would be likely to overreact to stressful situations and work pressures because of her anxiety disorder and personality disorder in finding that plaintiff "would experience moderate difficulty completing tasks in a timely manner due to deficiencies in concentration, persistence or pace due to mental impairments." PAGEID 62.

The ALJ also gave great weight to the opinions of Vicki Warren, Ph.D., and Irma Johnston, Psy. D., the state agency consultants. PAGEID 69, 75-76. The opinions of these experts further support the ALJ's RFC findings. For example, Dr. Johnston indicated that plaintiff was moderately limited in her ability to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extended periods, and to respond appropriately to changes in the work setting. PAGEID 171-172. The word "moderate" is normally defined in social security cases as describing a limitation that is not work preclusive and that allows the individual to function satisfactorily. *See* Doc. 20, pp. 17-18 (citing *Ziggas v. Colvin*, No. 1:13-cv-87, 2014 WL 1814019 at *6 (S.D. Ohio May 6, 2014) and

*Lacroix v. Barnhart*, 465 F.3d 881, 888 (8th Cir. 2006)). Dr. Johnston concluded that plaintiff was capable of understanding simple to moderately complex one to four-step instructions in a low pressure environment where the pace is not fast and of adapting to settings where changes are infrequent. PAGEID 170-172. The RFC limiting plaintiff to simple repetitive and moderately complex tasks that have infrequent changes in job duties and do not require a fast work pace or strict production quotas took into account the limitations posed by Dr. Johnston.

Plaintiff also argues that the ALJ did not adequately accommodate Dr. Rowland's findings regarding plaintiff's social limitations, specifically, the risk of plaintiff responding inappropriately to coworkers and supervisors. Plaintiff contends that ALJ did not explain how the RFC's limitation of "no more than occasional contact with supervisors and coworkers and no contact with the general public" addressed the limitations in Dr. Rowland's report, where he stated that plaintiff is prone to "daily episodes of rage that are inappropriately expressed" and "I suspect that she is at risk to respond inappropriately to supervision and coworkers." *See* PAGEID 504.

Dr. Rowland did not opine that these social limitations would preclude plaintiff from maintaining employment. In addition, the ALJ's decision sufficiently addresses Dr. Rowland's concerns regarding plaintiff's social functioning and explains why the accommodations in the RFC are adequate. The ALJ acknowledged Dr. Rowland's opinion that plaintiff was at risk to respond inappropriately to supervisors and coworkers. PAGEID 61, 69. However, the ALJ also cited medical records which indicated that,

9

although plaintiff, on some occasions, was noted to be belligerent and irritable, in other instances she was reported as having a stable mood and affect. PAGEID 61. The ALJ further observed that although plaintiff testified at the hearing that she screamed at family members daily, she also stated that she enjoyed playing with her grandchildren. PAGEID 61-62. The ALJ concluded that the evidence "indicates no more than a moderate limitation" in social functioning. PAGEID 62. The RFC is also supported by the opinion of Dr. Johnston, who stated that plaintiff is moderately limited in her ability to accept instructions from supervisors and to get along with coworkers. PAGEID 172. Dr. Johnston recommended that plaintiff have infrequent contact with supervisors and coworkers and no contact with the general public, *see* PAGEID 172, and these work restrictions were basically included in the RFC.

The court concludes that the ALJ adequately explained his RFC findings, and that the RFC is supported by substantial evidence.

## III. Conclusion

In accordance with the foregoing, the court concludes that the ALJ's finding of nondisability is supported by substantial evidence. The plaintiff's objections (Doc. 19) are denied. The court adopts and affirms the magistrate judge's report and recommendation (Doc. 18). The Commissioner's decision is affirmed, and this action is dismissed. The clerk shall enter final judgment affirming the decision of the Commissioner.

It is so ordered.

Date: September 18, 2017         s/James L. Graham
                                 James L. Graham
                                 United States District Judge